CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 3 0 2016
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KIM GERETTE,　　　　　　　　　　)
*on behalf of E.C., a minor child,*　　　)
　　　　　　　　　　　　　　　　　)　　Civil Action No. 7:15cv00012
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　By:　Michael F. Urbanski
　　　　　　　　　　　　　　　　　)　　　　United States District Judge
CAROLYN W. COLVIN,　　　　　　)
Commissioner of Social Security,　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　)

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on February 2, 2016, recommending that the plaintiff's motion for summary judgment be denied, the Commissioner of Social Security's ("Commissioner") motion for summary judgment be granted and the Commissioner's final decision be affirmed. ECF No. 21. Plaintiff Kim Gerette on behalf of E.C., a minor child, has filed objections to the report to which the government has responded. For the reasons stated herein, the court will **OVERRULE** Gerette's objections and **ADOPT** the magistrate judge's report and recommendation in its entirety.

I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit Court of Appeals has held that an objecting party must do so "with sufficient specificity so as

1

reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-CV-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08-CV-69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *'those portions* of the report or *specified* proposed findings or recommendations *to which objection is made.'"*).

Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.[1]

Gerette objects to the magistrate judge's finding that (1) substantial evidence supports the Administrative Law Judge's (ALJ) opinion that E.C.'s impairments do not functionally equal listing § 109.00 (Endocrine Disorders),[2] (2) substantial evidence supports the ALJ's decision not to give greater weight to the opinion of E.C.'s treating endocrinologist, Dr. Begum-Hasan, and (3) substantial evidence supports the ALJ's credibility determination. As the Commissioner points out,

---

[1] A detailed summary of E.C.'s impairments and medical history are available in the report and recommendation (ECF No. 21) and in the administrative transcript (ECF No. 8). As such, they will not be repeated here.

[2] Gerette's objection references both listings § 109.01 and § 109.00. Section 109.01 refers generally to the "Endocrine" category of impairment. Section 109.00 provides a description of the limitations that give rise to an endocrine-related disability. Because listing § 109.00(C) contains the language at issue in this case, the court will refer to listing § 109.00 rather than § 109.01.

3

Gerette raised these same three arguments in her summary judgment brief. The magistrate judge addressed these arguments in great detail in his report and recommendation, and Gerette simply disagrees with his conclusions. Such general and conclusory objections to the magistrate judge's findings do not warrant de novo review. Veney, 539 F. Supp. 2d at 844-46.

Nevertheless, to the limited extent Gerette objects to specific findings in the magistrate judge's report, the court has reviewed de novo those portions of the report and, for the reasons set forth herein, overrules Gerette's objections.

### A.

There is a three-step sequential evaluation process for determining whether a child is disabled under the Social Security Act. At step one, the Commissioner must determine whether the child is engaging in substantial gainful activity. At step two, the Commissioner must determine whether the child has a medically determinable impairment or combination of impairments that is severe. At step three, the Commissioner must determine whether the child's impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(a)-(d). Gerette's argument in this case centers on whether E.C., a school-age child with diabetes mellitus and attention deficit-hyperactivity disorder, functionally equals listing § 109.00.

In order for the Commissioner to find functional equivalence at step three, the child must have marked limitations in two of the six domains of functioning or an extreme limitation in one of the six domains, which are: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for oneself, and (vi) health and physical well-being. 20 C.F.R. § 416.926a(a), (b)(1). The ALJ determined that E.C.'s impairments or combination of impairments result in less than marked limitation in acquiring and using information, attending and completing tasks, interacting and

4

relating with others, and caring for himself; no limitation in moving about and manipulating objects; and marked limitation in health and physical well-being. Administrative Transcript, hereinafter "R." at 19-24. Because she concluded that E.C. has marked limitation in only one of the six relevant domains, the ALJ determined that the combined effect of E.C.'s impairments did not functionally equal a listing and E.C. therefore is not disabled under the Act.

1.

At summary judgment, Gerette did not take issue with the ALJ's specific findings as to the degree of E.C.'s limitation in any of these six domains.[3] Rather, Gerette argued the ALJ should have found the combined effects of E.C.'s impairments functionally equaled listing § 109.00 based on an example provided in the listing language. The relevant passage from § 109.00(C), discussing how the Commissioner evaluates diabetes mellitus (DM) in children, reads as follows:

> For . . . children with DM who are age 6 or older and require daily insulin, and children of any age with DM who do not require daily insulin [], we follow our rules for determining whether the DM is severe, alone or in a combination with another impairment, whether it meets or medically equals the criteria of a listing in another body system, or functionally equals the listings under the criteria in § 416.926a, considering the factors in § 416.924a. The management of DM in children can be complex and variable from day to day, and all children with DM require some level of adult supervision. For example, if a child age 6 or older has a need for 24-hour-a-day adult supervision of insulin treatment, food intake, and physical activity to ensure survival, we will find that the child's impairment functionally equals the listings based on the example in § 416.926a(m)(5).

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 109.00(C); see also 20 C.F.R. § 416.926a(m)(5) (listing as an example of impairments that functionally equal the listings "[r]equirement for 24-hour-a-day supervision for medical (including psychological) reasons"). Gerette argued before the magistrate

---
[3] Gerette objects to the magistrate judge's determination that "substantial evidence supports the ALJ's opinion that E.C. was not extremely limited in one domain of functioning" and argues "[t]he ALJ erred in finding E.C. has only marked limitations in the domain of health and physical well-being." Pl.'s Obj., ECF No. 22, at 1-2. At summary judgment, however, Gerette did not expressly take issue with the ALJ's findings as to the degree of E.C.'s limitation in any of the six domains, instead focusing her argument on the example referenced in § 109.00(C). To the extent that argument can be construed to implicitly contend the ALJ erred in finding only marked, rather than extreme, limitation in the sixth domain, health and physical well-being, it is addressed herein.

5

judge—and continues to maintain in her objections to the report and recommendation—that the record evidence establishes E.C. requires 24-hour adult supervision of his insulin treatment, food intake, and physical activity to ensure survival. Specifically, Gerette cited the fact that she intentionally enrolled E.C. in private school where his teachers can remind him to check his blood sugar levels throughout the day, that she accompanies him on sleepovers so that she can check his blood sugar at 2:00 a.m., and that E.C. attends a special summer camp for diabetic children where medical personnel can monitor him. Pl.'s Summ. J. Br., ECF No. 15, at 16-18. Gerette further pointed out that she keeps bottled water and food in the car in case E.C.'s sugar levels change and that he played soccer "but only because his father was the coach and is always there with him." Id. at 17. Gerette argued that E.C.'s treating endocrinologist, Dr. Begum-Hasan, opined that E.C. requires 24-hour supervision to ensure his survival. Id. at 18; see R. 593.

In a thorough report, the magistrate judge addressed these arguments and concluded that substantial evidence supports the ALJ's determination that E.C. "was not markedly limited in two or more domains or extremely limited in one domain of functioning" and that E.C. "did not require 24 hour supervision of his insulin treatment, food intake, and physical activity to ensure his survival." Report & Recommendation, ECF No. 21, at 8. Gerette objects generally to this conclusion and specifically argues that in so finding, the magistrate judge "ignores Gerette's testimony that E.C.'s friends and teachers regularly remind him to check his insulin levels when they notice that E.C. appears to be experiencing either high or low blood sugars and his parents monitor his levels at home." Pl.'s Obj., ECF No. 22, at 2. But the magistrate judge did not ignore Gerette's testimony. In fact, he recounted this testimony in detail in his report, Report & Recommendation, ECF No. 21, at 7-11, concluding:

> It is clear from the record that Gerette has done an admirable job caring for E.C., including helping to ensure that he adequately manages his diabetes. The fact that E.C.'s father coaches his soccer team, his mother is willing to accompany him on sleepovers, and he

6

> attends a summer camp designed for diabetic children both helps ensure E.C.'s safety and enriches his childhood. That said, I find that Gerette's argument that the ALJ "failed to properly consider the extent of [E.C.'s] highly structured environment" where "he is monitored 24 hours per day" lacks merit. Pl. Br. at 18, Dkt. No. 15. While Gerette indicated that when E.C. became excited or distracted, his adrenalin would increase, causing "up and down, and severe drops" the record does not support a finding that E.C. requires 24 hour adult supervision of insulin treatment, food intake, and physical activity to ensure survival. R. 42.

Report & Recommendation, ECF No. 21, at 9. The court agrees.

To be sure, Gerette testified that E.C.'s blood sugar levels are more erratic than normal given fluctuating hormone levels as he approaches puberty. She stated that "it's just minute-by-minute, hour-by-hour with him, and we just try to do our best to keep him at adequate levels." R. 41-42. Gerette explained that she intentionally placed E.C. in a small, private school where "[e]verybody's aware of him," R. 42, the "school's there to monitor [him]," R. 51, where she can supply him snacks, R. 51, and where there is no cafeteria food to pressure him to break his diet.[4] Gerette stated there is a "tag team of people involved" in E.C.'s care and that he is never alone. R. 51- 52. As the listing recognizes, however, "all children with DM require some level of adult supervision," 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 109.00(C), and it is the extent of that supervision—not the fact that E.C. requires supervision—that is relevant to this inquiry. To that end, Gerette was asked specifically by the ALJ whether she has to supervise E.C.'s insulin treatment:

> Q. Now do you think he's able to take ownership of what's going on and monitoring himself, or are you suggesting now that you have to be there, either because of his age or because of his ADHD?
>
> A. He is owning more to it. He does all of this [sic] things on his own without problem.

R. 41-42. While the evidence reveals that E.C.'s blood sugar levels can be erratic at times, the record on the whole indicates E.C.'s treatment, particularly his insulin pump, has worked to improve his

---

[4] Gerette testified that E.C. has also developed a wheat allergy and must eat foods that are gluten-free. R. 53-54.

7

condition. Indeed, Gerette testified that the insulin pump "has helped quite a bit . . . especially with sports activities and things." R. 41. The record evidence further establishes that E.C. himself is principally responsible for monitoring his blood sugar levels, pricking his finger seven to ten times a day at school. R. 41; see also R. 56. In addition, there is no evidence that E.C.'s survival depends on continuous monitoring of his food intake by adults, notwithstanding the fact that he brings a packed lunch to school and keeps snacks on hand. Nor does the record suggest he requires 24-hour adult supervision of his physical activity to survive. As the magistrate judge points out, pediatrician Kelly Nelson, M.D. noted in an October 2011 well-child visit treatment record that E.C. exercises 10-15 hours per week and "[t]here are no activity or exercise concerns." R. 404.

Questionnaires from two of E.C.'s teachers further support a finding that he does not require 24-hour adult supervision of his insulin treatment, food intake or physical activity. E.C.'s fourth grade teacher, Elizabeth Bursey, indicated in a questionnaire dated June 14, 2011 that E.C. had serious problems with "[c]ooperation in, or being responsible for, taking needed medications," but not in any other areas of caring for himself. R. 382. Ms. Bursey's written comment states:

> As a diabetic, [E.C.] was not always diligent about eating properly and giving himself his required injection after eating lunch. He often told me he had taken his insulin injection when in fact he had not. After discussions with [E.C.] and his family, I believe he now understands the importance of taking the injections as well as the importance of honesty in such matters.

Id. In the health and physical well-being section, Ms. Bursey noted only E.C.'s diabetes, the fact that he needs insulin, and that after taking medication "[h]e is less tired and more focused." R. 383. She describes no physical effects of this condition that interfere with E.C.'s functioning at school and checked "no" when asked whether E.C. frequently misses school due to illness. R. 383.

Emilie Temeles, who served as E.C.'s primary sixth grade teacher for the 2012-13 school year, also submitted a questionnaire. Ms. Temeles indicated E.C. has no problems caring for himself, R. 272, and in the health and physical well-being section noted E.C. had diabetes and once

8

had to go home from school because he forgot his insulin pump, R. 273. She also noted that E.C. checks his sugar daily after lunch and that E.C. took prescribed medication on a regular basis. R. 273. The final question on the form asks "What else can you tell us about the physical effects of the child's physical or mental condition or treatment for the condition?" Ms. Temeles wrote "None." R. 273.

In sum, other than recognizing that E.C. has diabetes requiring him to regularly check his blood sugar and medicine, E.C.'s teachers give no indication that they provide assistance to E.C. for his diabetes required to ensure his survival. All elementary school students are to some extent supervised by their teachers. While E.C.'s small private school may provide a more comfortable environment for E.C. to manage his diabetes, the responses of E.C.'s teachers suggest that E.C. neither requires nor is subjected to constant adult supervision and monitoring of his diabetes to ensure his survival, as contemplated by the example referenced in listing § 109.00(C). 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 109.00(C).

Gerette also objects to the magistrate judge's application of J.S.W. v. Colvin, No. 1:12-CV-315, 2013 WL 5303742 (S.D. Ind. Sept. 19, 2013). In J.S.W., the court reversed and remanded an administrative denial of social security disability benefits because the ALJ failed to properly weigh evidence that showed J.S.W. required 24-hour a day adult supervision. Id. at *7. In contrast to E.C., J.S.W. was unable to monitor and administer insulin on her own and required a school nurse or other adult to assist every time J.S.W. needed insulin. Id. at *3. Further, J.S.W. was non-compliant with her prescribed diet and would sneak snacks throughout the day, requiring adults to constantly observe J.S.W.'s eating habits. Id. Finally, unlike E.C., J.S.W. did not participate in any physical activities. Id. The magistrate judge properly applied J.S.W. and the case law generally in reaching his conclusion that substantial evidence supported the ALJ's decision finding E.C. does not require 24-hour adult supervision to ensure his survival.

2.

In finding E.C. does not functionally equal listing § 109.00(C), the ALJ gave little weight to the opinion of E.C.'s treating pediatric endocrinologist, Dr. Begum-Hasan. The magistrate judge held the ALJ's decision in that regard is supported by substantial evidence, and Gerette objects generally to this conclusion. Gerette points to no specific error in the magistrate judge's analysis. Although not required to do so, Veney v. Astrue, 539 F. Supp. 2d 841, 844-46 (W.D. Va. 2008), the court has taken a de novo look at the ALJ's application of the treating physician rule in this case and, for similar reasons as discussed above, agrees with the magistrate judge that the ALJ's decision is supported by substantial evidence.

In a two question check-the-box form completed on July 2, 2013, Dr. Begum-Hasan answered "Yes" to a question asking whether E.C. "requires[s] 24 hour supervision of his insulin treatment, food intake, and physical activity to ensure his survival." R. 593. At the same time, Dr. Begum-Hasan checked "No" to a question asking "does [E.C.] have an extreme limitation that interferes with his functioning at school?" R. 593. No further explanation for these answers is provided. The ALJ agreed with Dr. Begum-Hasan that E.C.'s condition requires monitoring but did not agree that the level of monitoring rose to the listing level. R. 18.

As the magistrate judge noted, the treating physician rule typically affords testimony of a treating physician such as Dr. Begum-Hasan greater weight but does not require the ALJ to afford such testimony controlling weight. Campbell v. Bowen, 800 F.2d 1247, 1250 (4th Cir. 1986). Where the treating physician's opinion contradicts clinical evidence or other substantial evidence, the opinion merits significantly less weight. Craig v. Chater, 76 F.3d. 585, 590 (4th Cir. 1996). The magistrate judge properly summarized the law concerning the weight given to a treating physician's opinion:

> [T]he ALJ must determine the weight to give the opinion based upon an evaluation of the following factors: (1) whether the physician has

examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; (5) whether the physician is a specialist; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c); Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). The ALJ is not required to discuss each factor, but must provide an explanation for the weight assigned to a medical opinion that is 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' SSR 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5; see also Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) ('That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review.'). Further, '[f]orm reports, in which a physician's only obligation is to check a box or fill in a blank, are entitled to little weight in the adjudicative process.' Whitehead v. Astrue, No. 2:10-CV-35-BO, 2011 U.S. Dist. LEXIS 56182, at *25, 2011 WL 2036694, at *9–10 (E.D.N.C. May 24, 2011) (unpublished) (determining that a check-box form completed by a treating physician was not entitled to controlling weight where it was inconsistent with the physician's own treatment notes and gave no explanation or reasons for the findings, leaving the ALJ unable to determine whether the physician applied the relevant regulatory definitions).

Report & Recommendation, ECF No. 21, at 12-13. In addressing Dr. Begum-Hasan's opinion, the ALJ explained:

> Although I agree that [E.C.'s] condition does require monitoring, it is not to the level as intended by this listing. The claimant is able to attend school and participate in physical activities without significant limitations despite his condition.

R. 18. This explanation, supported as it is by other information in the ALJ's decision, meets the requirement that the ALJ's explanation "make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5; see also Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).[5]

---

[5] To be sure, the ALJ's decision does not track the Johnson factors chapter and verse. While not best practice, the court does not believe that the brevity of the ALJ's rationale requires a remand, as it is clear from the entirety of the

11

The ALJ properly found that Dr. Begum-Hasan's unexplained check box statement that E.C. requires 24-hour supervision is not entitled to controlling weight, as it is inconsistent with E.C.'s participation in school and physical activities and his mother's testimony at the hearing that E.C. "has received improvement in his condition with the insulin pump, especially when participating in sports activities. He is able to do more on his own now." R. 18. The ALJ further explained:

> [E.C.] still experiences highs and lows in his blood sugar, but he has been able to spend time with friends and carry out age appropriate daily activities. The evidence suggests the claimant's diabetes and attention deficit hyperactivity disorder do not prevent him from carrying out daily activities such as attending school, completing school work, participating in extra-curricular activities, and handling age appropriate behavior in the home setting. Although his diabetes in particular requires monitoring, he has not required subsequent hospitalizations since his diagnosis and his blood sugars have been under much better control with the insulin pump use.

R. 18. Substantial evidence cited by both the magistrate judge and discussed above is at odds with Dr. Begum-Hasan's unexplained opinion that 24-hour supervision is required for E.C.'s survival. As previously discussed, the record evidence supports the ALJ's determination that E.C.'s diabetes does not rise to the level of the listing. E.C. takes his own medication, attends school daily, participates in athletics, complies with his diet and treatment plan, and handles age-appropriate activities. In her objection, Gerette cites no additional medical evidence that aligns with Dr. Begum-Hasan's opinion that E.C. requires 24-hour adult supervision to survive, and there is no support for this opinion in Dr. Begum-Hasan's own treatment records. Considering the record as a whole, it is clear that

---

ALJ's decision and the record as a whole that E.C.'s ability to care for himself, monitor his diabetes with the assistance of the insulin pump and participate in school and physical activities is not consistent with listing level severity. As the Fourth Circuit Court of Appeals noted in Bishop v. Commissioner of Social Security, 583 F. App'x 65, 67 (4th Cir. 2014), "[w]hile the ALJ did not explicitly analyze each of the Johnson factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons under Johnson." The court notes additionally that Gerette raises no issue as to the sufficiency of the ALJ's explanation for the weight given to Dr. Begum-Hasan's opinion; rather, she takes issue only with the ALJ's decision not to give Dr. Begum-Hasan's opinion greater weight, an argument based on the same reasons she contends E.C. functionally equals listing § 109.00(C).

substantial evidence supports the ALJ's decision not to give Dr. Begum-Hasan's opinion controlling weight.

### B.

Finally, Gerette objects generally to the magistrate judge's conclusion that the ALJ's credibility findings are supported by substantial evidence. Gerette restates her argument that the ALJ erroneously concluded that E.C.'s glucose levels have stabilized with use of the insulin pump and that the pump has generally helped E.C. to function. Gerette again takes issue with the magistrate judge's findings that E.C. cares for his diabetes on his own accord and handles school, homework, sports and other age-appropriate activities. The arguments raised in Gerette's objections are duplicative of those raised in her summary judgment brief, and those arguments were thoroughly evaluated by the magistrate judge in his report. Such general objections do not warrant de novo review by the court. Veney, 539 F. Supp. 2d at 844-46.

In any event, it is plain that the ALJ conducted a proper credibility analysis in this case and sufficiently explained her reasons for finding Gerette's allegations as to the volatility of E.C.'s insulin level and condition were not credible. R. 18. Both the magistrate judge and ALJ adequately explained their findings for concluding the medical evidence and other testimony from Gerette herself tend to show E.C.'s condition has improved and his impairments do not functionally equal a listing. Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06-CV-00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)).

13

## III.

At the end of the day, it is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The court has reviewed the magistrate judge's report, the objections to the report, the Commissioner's response to the objections, and the administrative record and, in so doing, made a de novo determination of those portions of the report to which Gerette properly objected. The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision. As such, the magistrate judge's report and recommendation will be **ADOPTED** in its entirety, the Commissioner's motion for summary judgment **GRANTED**, Gerette's motion for summary judgment **DENIED**, and the case **DISMISSED**.

An appropriate Order will be entered to that effect.

Entered: 03-30-2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge